IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TYRONE LAVALL SCOTT                                                                      PLAINTIFF

v.                                              Civil No. 4:21-cv-04090

NURSE S. KING                                                                              DEFENDANT

**REPORT AND RECOMMENDATION**

This is a civil rights action filed *pro se* by Plaintiff, Tyrone Lavall Scott, under 42 U.S.C. § 1983.  Plaintiff names as Defendant Nurse S. King.  Plaintiff claims Defendant violated his constitutional rights in his individual capacity.[1]  Before the Court is Defendant King's Motion for Summary Judgment.  (ECF No. 23).  Plaintiff filed a Response (ECF No. 26).  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

### I.     FACTUAL BACKGROUND

Plaintiff is currently incarcerated in the Arkansas Department of Corrections – East Arkansas Regional Unit.  His claim in this action arise from his incarceration in Miller County Detention Center ("MCDC") in 2021.  At all times relevant to the instant lawsuit, Defendant King was medical staff employed with Southern Health Partners ("SHP") the company that provides medical services to the MCDC, and Plaintiff was a convicted prisoner.

---

[1] Plaintiff's official capacity claim against Defendant King was dismissed during the Section 1915(g) preservice screening procedure along with all other claims and Defendants in Plaintiff's Amended Complaint.  (ECF Nos. 11, 12).

1

Plaintiff was booked into MCDC on July 27, 2021 and transferred out to the ADC on August 28, 2021. (ECF No. 26, p.1). Plaintiff was returned to MCDC and booked in, on September 10, 2021, to make a court appearance. (ECF No. 20-2, p. 1). During his booking on September 10, 2021, Plaintiff informed the booking officer he had a metal rod in his spine, and he was currently on blood pressure medication. (ECF No. 20-2, p. 2).

On September 25, 2021, Plaintiff submitted a medical request to be put on the doctor's list for "a rod just below my spine . . . hurting really bad." (ECF No. 20-2, p. 3). In this medical request, Plaintiff indicated this was not his first request regarding this issue and he should have been put on the doctors list "last week." *Id.* The response on this medical request notes: "Seen by . . . Nurse Lisa." *Id.*

Plaintiff was examined by L. Davidson, LPN on this same day, and during this examination an x-ray ordered of Plaintiff's coccyx—tailbone. (ECF No. 20-2, p. 4). L. Davidson, LPN noted under additional assessment notes: "[Patient] stated he has a metal rod in his lower back close to his tail bone and it feels like it has moved. [Patient] has steady gait with no difficulty with ROM at this time." (ECF No. 20-2, p. 5). Finally, Plaintiff received naproxen on September 25, 2021. (ECF No. 20-2, p. 6).

On September 27, 2021, Plaintiff received an x-ray of his Sacrum/Coccyx area. (ECF No. 20-2, p. 7). The radiology interpretation noted it was done to investigate pain in rectum and rule out foreign object. Further it stated:

> No acute fracture. No disruption of the sacral arcuate lines. No diastases of the pubic symphysis or the sacroiliac joints. No lytic or blastic osseous lesion. Soft tissues are normal. No ankylosis. No periarticular erosions or calcifications. Mineralization is normal. No radiopaque foreign body. L5/S1 disc osteophytosis. Pelvic phlepoliths.

*Id.* The radiologist also noted "no acute finding." *Id.*

## II. PROCEDURAL BACKGROUND

Plaintiff filed his original Complaint on November 19, 2021 (ECF No. 1) and his Amended Complaint on January 25, 2022. (ECF No. 10). Defendant Steve King Answered on April 16, 2022. (ECF No. 16). In his Complaint, Plaintiff asserts multiple claims against multiple defendants, however, the only claim that survived preservice screening pursuant to 28 U.S.C. § 1915A, is one claim of denial of medical care against Defendant King in his individual capacity. (ECF Nos. 11, 12).

In his Amended Complaint, Plaintiff describes his remaining claim against Defendant King as "denial of medical attention" and identifies Nurse King as the Defendant who violated his rights. (ECF No. 10, p. 10). *Id.* He specifically states:

> I Tyrone Scott had an x-ray done on 9-25-21 about a rod over my rectum was protruding out. The x-ray was done and I was told that it wasn't anything there. Which I know it was because I felt it and tried pulling it out only to bring back a bloody tissue. I never had a surgery back there before. Nurse S. King still didn't schedule me to see the doctor when Lisa or Chelsie had me scheduled to see the doctor.

*Id.*

Defendant King filed his Motion for Summary Judgment with Brief in Support and Statement of Facts on September 16, 2022. (ECF Nos. 20, 21, 23). Defendant King argues (1) Plaintiff did not suffer from a serious medical need as required by the Eighth Amendment, (2) he was not deliberately indifferent to any serious medical need of Plaintiff; and (3) Plaintiff cannot meet proof with proof. (ECF No. 20).

Plaintiff filed his Response with disputed facts on November 3, 2022. (ECF No. 26). Plaintiff disputes the fact that September 25, 2021 was the first medical request he made regarding the metal rod. Instead, he states he made three previous requests. Specifically, Plaintiff claims he requested medical attention regarding the metal rod on September 11, 2021, September 13, 2021,

and September 15, 2021.  However, Plaintiff does not attach these requests for the Court's review. *Id*. at 1-2.  Secondly, Plaintiff objects to the results of the x-ray performed on September 27, 2021.  Specifically, Plaintiff argues: "They took x-rays and never once stated any finding nor told me what was showed in the x-ray."  *Id*. at 2.  Third, Plaintiff argues that an unknown object inside one's body is a serious medical need.  *Id*.  Finally, Plaintiff also claims that he was denied a visit to the doctor and the x-ray was altered.  *Id*.  The only documentation or summary judgment evidence attached to Plaintiff's response is his MCDC Book-In Sheet from July 27, 2021 and September 10, 2021.  (ECF Nos. 26-1; 26-2).

### III. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.  "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607.  "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts

4

for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Under § 1983, a defendant may be sued in either his personal capacity, or in his official capacity, or claims may be stated against a defendant in both his personal and his official capacities. The type of conduct that is actionable and the type of defense available depend on whether the claim is asserted against a defendant in his official or individual capacity. *See Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself." *Id.* Personal capacity claims "are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense" to these individual capacity claims. *Id.* To state a claim under 42 U.S.C. § 1983, Plaintiff must allege that the defendant acted under color of state law, and that the actor violated a right, privilege, or immunity secured by the Constitution. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).

## IV. DISCUSSION

Plaintiff's denial of medical care claim is analyzed under the Eighth Amendment as he was a convicted inmate at the time in question. *See e.g., Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020). To succeed on this type of claim, Plaintiff must demonstrate (1) that he had an objectively serious medical need, and (2) that the Defendants knew of, but deliberately disregarded, that serious medical need. *See Ivey v. Audrain Cnty., Mo.*, 968 F.3d 845, 848 (8th Cir. 2020). "A serious medical need is one that has been diagnosed by a physician as requiring

5

treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal citation and quotations omitted). "[T]o demonstrate that a defendant actually knew of, but deliberately disregarded, a serious medical need, the plaintiff must establish a mental state akin to criminal recklessness: disregarding a known risk to the [detainee's] health." *Barton v. Taber*, 908 F.3d 1119, 1124 (8th Cir. 2018) (citations omitted). The Eighth Circuit has stated that this "onerous standard requires a showing more than negligence, more than even gross negligence, but less than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Thompson v. King*, 730 F.3d 742, 747 (8th Cir. 2013) (internal quotations and citations omitted).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that [these] delays adversely affected his prognosis[,]" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotations and citations omitted), unless the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999)); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (holding a three-week delay, "coupled with knowledge of inmate-patient's suffering, can support a finding of an Eighth Amendment violation").

6

Here, Plaintiff's complaint is that Defendant King failed to treat him for his serious medical need—a metal rod protruding from his anus. (ECF No. 10). The summary judgment evidence shows Plaintiff received pain medication (ECF No. 20-2, p. 6), and an x-ray of his tailbone and anus area. (ECF No. 20-2, p. 7). This x-ray indicated no foreign object was present in Plaintiff's anus. (ECF No. 20-2, p. 7). Thus, no further treatment was warranted. Based on these facts, the Court finds Plaintiff did not suffer from an objectively serious medical need, and thus, Defendant King was not deliberately indifferent in failing to treat Plaintiff. *See Ivey*, 968 F.3d at 848. Further, the record indicates Defendant King had no knowledge of a serious medical need as the medical records indicate there were none. Without knowledge of the serious medical need, Defendant King could not have deliberately disregarded the need. *See Barton*, 908 F.3d at 1124.

The Court recognizes Plaintiff's claim of material facts in dispute. Particularly, Plaintiff makes a conclusory statement that his x-ray results were altered, and that he does in fact have a metal rod in his anus that Defendant King is refusing to remove. However, Plaintiff provides no proof in support of this contention. Without supporting evidence on the record, the Court cannot adopt Plaintiff's allegations as true, even on summary judgment, as they are blatantly contradicted by the summary judgment record. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

Furthermore, mere disagreement with the medical treatment one receives does not rise to the level of a constitutional violation. *Jolly v. Knudsen*, 205 F.3d 1094 (8th Cir. 2000). Here, Plaintiff disagrees with his diagnosis or lack of diagnosis. However, he did not provide any evidence to show the treatment provided was insufficient.

Even if the Court construes Plaintiff's claim as a delay of medical care claim—finding that his first medical request was made on September 11, 2021 but the x-ray was not performed until September 27, 2021—Plaintiff still fails to state deliberate indifference in this delay. Plaintiff has

7

not produced any verifying medical evidence that the delay in performing the x-ray caused any detrimental effects to his prognosis. *Holden*, 663 F.3d at 342.

Lastly, Plaintiff has not shown that Defendant King caused his denial of medical care. It appears from the record that non-party medical professionals initially examined Plaintiff (ECF No. 20-2, p. 4), performed Plaintiff's x-ray (ECF No. 20-2, p. 7), and interpreted Plaintiff's radiology results (*Id.*). While the Court will construe Plaintiff's pleadings liberally, *pro se* litigants are not excused from failing to comply with substantive and procedural law. *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984). To prove a claim against Defendant King, Plaintiff must establish that Defendant King "personally violated [his] constitutional rights." *Jackson v. Nixon,* 747 F.3d 537, 543 (8th Cir. 2014). Liability under Section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006). Plaintiff has not provided any evidence on the summary judgment record that Defendant King is the medical professional responsible for the actions or inactions about which he complains. Accordingly, Plaintiff's claims against Defendant King fail as a matter of law.

## V. CONCLUSION

For the reasons stated above, I recommend Defendant Steve King's Motion for Summary Judgment (ECF No. 23) be **GRANTED** and the claim against him be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 19th day of April 2023.

*/s/ Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE